IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | | |
|---|---|---|
| EARNEST V. STEPHENS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CIVIL ACTION NO. 1:07cv1001-CSC |
| | ) | (WO) |
| MICHAEL J. ASTRUE, | ) | |
| COMMISSIONER OF SOCIAL | ) | |
| SECURITY, | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION**

**I. Introduction**

The plaintiff, Earnest V. Stephens ("Stephens"), applied for applied for disability insurance benefits pursuant to Title II of the Social Security Act, 42 U.S.C. § 401 *et seq.*, and supplemental security income benefits pursuant to Title XVI, 42 U.S.C. § 1381, *et seq.*, alleging that he was unable to work because of a disability. His application was denied at the initial administrative level. Stephens then requested and received a hearing before an Administrative Law Judge ("ALJ"). Following the hearing, the ALJ also denied the claim. Stephens submitted a request for review to the Appeals Council. Upon considering Stephens' request, the Appeals Council vacated the ALJ's decision and remanded the case with directions that the ALJ should conduct further proceedings and issue a new decision. (R. 105.) Supplemental hearings were conducted on September 27, 2005, February 8, 2006, and November 15, 2006. Following these proceedings, the ALJ denied the claim. The Appeals Council rejected a subsequent request for review. The Appeals Council's decision

consequently became the final decision of the Commissioner of Social Security ("Commissioner").[1]  *See Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986). On December 2, 2008, this court held oral argument. The case is now before the court for review pursuant to 42 U.S.C. § 405 (g) and § 1631(c)(3).

Pursuant to 28 U.S.C. § 636(c)(1) and M.D. Ala. LR 73.1, the parties have consented to entry of final judgment by the United States Magistrate Judge. Based on the court's review of the record in this case and the briefs of the parties, the court concludes that the decision of the Commissioner should be reversed and remanded to the Commissioner with directions for an award of benefits.

## II. Standard of Review

Under 42 U.S.C. § 423(d)(1)(A), a person is entitled to disability benefits when the person is unable to

> engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months. . . .

To make this determination,[2] the Commissioner employs a five-step, sequential evaluation process. *See* 20 C.F.R. § 404.1520, §416.920.

(1) Is the person presently unemployed?

---

[1] Pursuant to the Social Security Independence and Program Improvements Act of 1994, Pub.L. No. 103-296, 108 Stat. 1464, the functions of the Secretary of Health and Human Services with respect to Social Security matters were transferred to the Commissioner of Social Security.

[2] A "physical or mental impairment" is one resulting from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques.

> (2) Is the person's impairment severe?
> (3) Does the person's impairment meet or equal one of the specific impairments set forth in 20 C.F.R. Pt. 404, Subpt. P, App. 1?
> (4) Is the person unable to perform his or her former occupation?
> (5) Is the person unable to perform any other work within the economy?
>
> An affirmative answer to any of the above questions leads either to the next question, or, on steps three and five, to a finding of disability. A negative answer to any question, other than step three, leads to a determination of "not disabled."

*McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1986).[3]

The standard of review of the Commissioner's decision is a limited one. This court must find the Commissioner's decision conclusive if it is supported by substantial evidence. 42 U.S.C. § 405(g); *Graham v. Apfel*, 129 F.3d 1420, 1422 (11th Cir. 1997). "Substantial evidence is more than a scintilla, but less than a preponderance. It is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971). A reviewing court may not look only to those parts of the record which supports the decision of the ALJ but instead must view the record in its entirety and take account of evidence which detracts from the evidence relied on by the ALJ. *Hillsman v. Bowen*, 804 F.2d 1179 (11th Cir. 1986).

> [The court must] . . . scrutinize the record in its entirety to determine the reasonableness of the [Commissioner's] . . . factual findings . . . No similar presumption of validity attaches to the [Commissioner's] . . . legal conclusions, including determination of the proper standards to be applied in evaluating claims.

---

[3] *McDaniel v. Bowen*, 800 F.2d 1026 (11th Cir. 1986), is a supplemental security income case (SSI). The same sequence applies to disability insurance benefits. Cases arising under Title II are appropriately cited as authority in Title XVI cases. *See e.g. Ware v. Schweiker,* 651 F.2d 408 (5th Cir. 1981) (Unit A).

*Walker v. Bowen*, 826 F.2d 996, 999 (11th Cir. 1987).

## III. Administrative Proceedings

Stephens was forty years old at the time of the September 27, 2005, hearing before the ALJ.  (R. 959, 997.)  He attended special education classes during the Spring of his sophomore year and completed tenth grade. (R. 212, 970.)  Stephens' prior work experience includes work as a laundry worker, garbage collector, fast food cook, janitor, full-purpose finisher, and donut maker.  (R. 954, 1001.)  Stephens alleges that he became disabled due to blindness in his right eye, bad nerves, a lower back and right knee injury, a learning disability, an arthritic knee, chest pain, an ulcer, and gastroesophageal reflux disease.  (R. 146, 159, 209, 925, 929, 964, 1009-1011.)  Following the supplemental hearings, the ALJ concluded that Stephens has severe impairments of lower back disc bulging, depressive disorder, and borderline intellectual functioning.  (R. 20.)  The ALJ also determined that Stephens is unable to perform his past relevant work, but that he retains the residual functional capacity to perform light work with moderate mental nonexertional limitations. (R. 27.)  Based on the testimony of a vocational expert, the ALJ concluded that there were a significant number of jobs existing in the national economy that Stephens could perform, including work as a cafeteria attendant, garment bagger, housekeeper, assembler, or surveillance system monitor. (R. 33.) Accordingly, the ALJ concluded that Stephens was not disabled.  (*Id.*)

### IV.  The Issues

In his brief, Stephens raises the following claims:

(1) Although the Commissioner so heavily relied upon Dr. Davis' non-examining medical expert testimony, the Commissioner erroneously and inexplicably failed to incorporate Dr. Davis' opinion as to Stephens' need to be limited to "very simple" work that would not involve reading to any great extent.

(2) In direct violation of explicit Eleventh Circuit case law and the Commissioner's own regulations and rulings, the Commissioner erred in failing to acknowledge the existence of the contrary opinion of the state agency psychologist that Stephens was unable to perform detailed instructions, was limited to concentrating for only two hours at a time but could not concentrate for extended periods, and would do best in roomy workplaces with only a few familiar employees.

(3) In addition to mistakenly assuming a disability claims examiner was a physician, the Commissioner further erred in (1) failing to articulate good cause for discrediting the multiple opinions of Dr. Owen that he is unable to work and limited in his ability to lift and bend and (2) failing to even acknowledge the contrary treating opinions of Dr. Banner, who also agreed that Stephens should not perform any lifting, climbing, bending, or stooping.

(4) The Commissioner erred in failing to consider the impact of Stephens' well-documented monocular vision on his ability to perform the requirements of the listed occupations.

(5) Despite the vocational expert's testimony and the Commissioner's claim that the VE's testimony is consistent with the Dictionary of Occupational Titles, the VE's testimony directly conflicts with the DOT as to the exertional demands of two of the listed occupations and at least four of the six occupations require the ability to understand and carry out detailed instructions.

(Doc. No. 15.)

## V.  Discussion

Stephens raises several issues and arguments related to this court's ultimate inquiry of whether the Commissioner's disability decision is supported by the proper legal standards and by substantial evidence.  *See Bridges v. Bowen*, 815 F.2d 622 (11th Cir. 1987).  However, the court pretermits discussion of Stephens' specific arguments because the court concludes that the ALJ erred as a matter of law, and thus, the Commissioner's decision is due to be reversed and this case remanded for further proceedings.  Specifically, the court finds that the Commissioner erred in failing to find, as a matter of law, that Stephens is disabled under § 12.05C of the Listing of Impairments.  *See* 20 C.F.R. Subpart P, App. 1. The Listing provides, in pertinent part, that a claimant is disabled if he meets the following criteria:

> 12.05 Mental Retardation: Mental Retardation refers to significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period; *i.e.*, the evidence demonstrates or supports onset of the impairment before age 22.
>
> The required level of severity for this disorder is met when the requirements in A, B, C, or D are satisfied . . . .
>
> C.  A valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing  additional and significant work-related limitation of function.

20 CFR Pt. 404, Subpt. P, App. I.  Thus, to be considered for disability benefits under Listing 12.05C, a claimant must (1) have significantly subaverage intellectual functioning; (2) have deficits in adaptive functioning; and (3) have manifested deficits in adaptive behavior before age 22.  *See Pettus v. Astrue*, 226 Fed. Appx. 946, 948 (11th Cir. 2007) (citing *Crayton v.*

*Callahan*, 120 F.3d 1217, 1219 (11th Cir. 1997)). In addition, the claimant must have (1) a valid IQ score of 60 through 70 inclusive, and (2) an additional mental or physical impairment significantly affecting the claimant's ability to work. *Id.*

Stephens was administered the Wechsler Intelligence Scale for Adults ("WAIS-III") by Dr. Walter Jacobs, a consultative psychologist, in December 2002. (R. 401.) Stephens received a verbal IQ score of 63, a performance scale IQ score of 65, and a full scale IQ score of 61. (R. 403.) Dr. Jacobs further found that "Stephens appeared to be adequately motivated during the evaluation and was cooperative during the interview." (R. 404.) The psychologist concluded that Stephens' intellectual functioning would not change. (*Id.*) Because Stephens received a valid full scale IQ score of 61, the court concludes that the claimant has met his burden to establish mental retardation under the Listing.

During oral argument, the Commissioner argued that the testimony of a medical expert and the opinions of state non-examining consultative opinions establish that Stephens' full scale IQ score of 61 is not an accurate representation of Stephen's mental ability. It is true that a valid IQ score is not conclusive of mental retardation when the score is inconsistent with other evidence in the record, such as daily activities and behavior. *See Popp v. Heckler*, 779 F.2d 1497, 1499 (11th Cir. 1986); *Outlaw v. Barnhart*, 197 Fed. Appx. 825, 827 (11th Cir. 2006). Thus, a valid IQ score is not conclusive of mental retardation if the score is not consistent with other evidence of record. *Lowery v. Sullivan*, 979 F.2d 835, 837 (11th Cir. 1992).

When discussing whether Stephens meets the requirements of the Listing, the ALJ gave greater weight to the opinion of Dr. Davis, a non-examining psychologist, that Stephens functions within the borderline or low average range of intelligence and rejected the opinion of Dr. Jacobs, an examining psychologist, that he suffers from mental retardation. Taken alone, the opinion of a non-examining physician does not constitute substantial evidence to support an administrative decision. *Swindle v. Sullivan*, 914 F.2d 222, 226 n. 3 (11th Cir 1990). However, an ALJ does not err in relying on the opinion of the non-examining physician when that opinion does not contradict an examining physician's opinion. *Edwards v. Sullivan*, 937 F.2d 580, 584-85 (11th Cir. 1991). Specifically, the ALJ determined as follows:

> At the September 27, 2005 hearing, Dr. Davis testified that Dr. Jacobs' diagnosis of mild mental retardation in Exhibit 13-F was inconsistent with the rest of the claimant's record. He explained that the rest of the claimant's record was not consistent with someone functioning in the range of mild mental retardation but was more consistent with someone functioning in the borderline range or low average range of intellectual functioning. He advised that he based his opinion on the claimant's long 10-to-15-year history of employment, his 10th grade education, his driver's license, his social life, and the fact that he had been married, paid his bills, read at least part of the newspaper, had friends, and maintained a relationship with his family. Dr. Davis explained that he believed that the claimant's life history should be given more weight than the single evaluation of Dr. Jacobs. He testified that the claimant had not demonstrated deficits in adaptive functioning either before or after age 22.
>
> Although the claimant has had the IQ scores necessary to have met either of these Listings, he has . . . not demonstrated the requisite deficits in adaptive functioning. As noted by Dr.

>       Davis, the claimant has functioned at a level more consistent
>       with the borderline range of low average range of intellectual
>       functioning, both before and after the developmental period.
>       The claimant's school records did not indicate that the claimant
>       was in special education classes.

(R. 27.)

The ALJ's reliance on Dr. Davis' opinion is misplaced.  First, Dr. Davis determined that the claimant's long history of employment indicates that he functions at the borderline range of functioning; the evidence, however, shows that Stephens is unable to remain in a job for any significant duration.  For example, personnel records indicate that Stephens was employed by, and subsequently ceased working for, twenty-nine different employers between 1987 and 2002.  (R. 151-57.)  In addition, Stephens testified that he had difficulty holding a job because employers "had to keep telling him over and over" what to do.  (R. 975.)  Thus, Dr. Davis' determination that Stephens' "long history of employment" establishes that he does not suffer from mild mental retardation is not supported by substantial evidence.  Indeed, Stephens' long history of employment difficulties supports a finding of retardation.

Secondly, Dr. Davis opined that Stephens' tenth-grade education indicates that Stephens has at least borderline intelligence.  The ALJ also noted that Stephens' school records indicate that he never attended special education classes.  Although the record includes a letter from Dothan City Schools indicating that the Exceptional Student Services Office has no special education records on Stephens,[4] Stephens' report card indicates that he

---

[4]This is not surprising.  *See Assoc. for Retarded Citizens of Alabama v. Teague*, 830 F.2d 158 (11th Cir. 1987) (Alleging systemic failure to provide facilities and programs required to comply with the Education for All Handicapped Children Act).  *Teague* was decided on the basis of the plaintiffs' failure to exhaust administrative remedies.

attended some special education classes. For example, in tenth grade, Stephens received average grades in Special Math, Special Science, Special English, and Special Social Studies.[5] (R. 212.) Evidentiary materials also indicate that Stephens was enrolled in Special English and Special Social Studies II in eleventh grade, but that he was withdrawn from school prior to completing these courses. (*Id.*) Consequently, Dr. Davis' finding that Stephens completed tenth grade without attending any special education classes is not supported by substantial evidence.

Dr. Davis also opined that Stephens' license to drive indicates that he has a borderline intelligence level. The record does not clearly indicate whether Stephens possessed a driver license. Although Stephens testified that he has had a driver license since he was fifteen years old, optometry records indicate that he was denied a license in January 2001. (R. 350, 970). An administrative law judge has a duty to develop a full and fair record. *Kelley v. Heckler*, 761 F.2d 1538 (11th Cir. 1985). When there is a conflict, inconsistency, or ambiguity in the record, the ALJ has an obligation to resolve the conflict, giving specific reasons supported by the evidence as to why he accepted or rejected a finding. The ALJ, however, did not resolve this inconsistency in his analysis. Due to inconsistencies in the record, the court is unable to discern whether Stephens possessed a driver license or drove a vehicle. Thus, the court cannot conclude that the ALJ's reliance on Dr. Davis' finding that Stephens' license to drive was indicative of borderline intelligence is supported by

---

[5] The evidentiary materials indicate that Stephens' grades in Social Studies substantially improved after attending Special Social Studies classes. (R. 212.)

10

substantial evidence.

Finally, Dr. Davis also concluded that Stephens' ability to read at least part of the newspaper indicates his intelligence falls within the borderline range.  However, during the hearing, Stephens testified that he is able to "just look[] through [the newspaper]." (R. 970.) He also stated that he "can't read ... long words" but that he can read "certain words."  (R. 971.)  This court concludes that Stephens' ability to "look through" the newspaper and read "certain words" does not demonstrate that he reads stories in the newspaper as part of his daily activities.   The court therefore concludes that Dr. Davis' opinion is not supported by the evidence and thus the ALJ's reliance on that opinion cannot be supported by substantial evidence.

Several factors indicate that Stephens suffers from significantly subaverage intellectual functioning with deficits in adaptive functioning.  The examining psychologist, Dr. Jacobs, determined that Stephens suffers from mild mental retardation with a valid full-scale IQ score of 61.  The evidentiary materials also show that Stephens has been employed by at least twenty-nine different employers and that he attended some special education classes.  In addition, Stephens' testimony indicates that he was unable to hold a job due to difficulty following his employers' instructions.  Thus, the record indicates that Stephens' daily activities and behavior are consistent with those of an individual suffering from mental retardation with a valid full-scale IQ score of 61.  *See Popp*, *supra*.  Accordingly, this court finds that Stephens suffers from significantly subaverage intellectual functioning with deficits in adaptive functioning which manifested itself before age 22.

In reaching this conclusion, the court has carefully considered whether it should remand the case to the Commissioner rather than reverse and direct an award of benefits. As noted in this opinion, the ALJ failed to resolve several evidentiary inconsistencies and ambiguities. Stephens originally filed his administrative claim for benefits in 2002. After several administrative remands, the final and last ALJ decision was rendered on April 24, 2007, and Stephens filed this action on November 13, 2007. While Social Security proceedings are inquisitorial, not adversarial, *see Ingram v. Commissioner of Social Sec. Admin.*, 496 F.3d 1253 (11th Cir. 2007), courts have long, routinely assigned evidentiary burdens to both the claimant and the Commissioner. *See, e.g., Johns v. Bowen*, 821 F.2d 551 (11th Cir. 1987) (A Social Security claimant bears the initial burden of proving inability to perform prior relevant work); *Jackson v. Bowen*, 801 F.2d 1291 (11th Cir. 1986) (If a claimant meets the burden of showing he can no longer do his past relevant work, the burden shifts to the Commissioner to prove that other work exists in the national economy which the claimant can perform). In this case, enough is enough; the Commissioner has not met his burden of demonstrating the existence of substantial evidence to support several salient conclusions, as explained above.

Next, the court must consider whether Stephens has a physical impairment imposing an additional and significant work-related limitation of function. First, the court notes that, although the ALJ made one isolated reference in his summary of the medical records that Stephens reported to a consultative examiner that he had been blind in his right eye since birth, the ALJ neither discussed optometry records included in the evidentiary materials or

specifically found Stephens' blindness to be a severe impairment. The ALJ is not free to simply ignore medical evidence, nor may the ALJ pick and choose between the records selecting those portions which support his ultimate conclusion. Optometry records from January 2003 indicate that Stephens suffers from a coloboma with a key hole pupil and that, with glasses, he has 20/200 vision in his right eye and 20/20 vision in his left eye. (R. 839.)

The law concerning whether blindness in one eye is a physical impairment which imposes additional and significant work-related limitations of function and meets the requirement of 12.05C is unsettled. For example, in *McGill v. Callanah*, 127 F.3d 1105, 1997 WL 661353, * 1 (9th Cir. 1997) (Table), the court affirmed the Commissioner's determination that the record did not support a finding that the claimant's monocular vision was a severe impairment. In *Banks v. Massanari*, 258 F.3d 820, 825 (8th Cir. 2001), the court also held that the claimant's blindness did not significantly limit her ability to work because she had successfully worked for years with that condition. Another line of thought was discussed in the dissenting opinion, in which a judge determined that the claimant "clearly met the second requirement of the standard" because "[i]t cannot be denied that blindness in one eye is a physical impairment, which imposes additional and significant work-related limitations of function." *Banks*, 258 F.3d at 830. In addition, in *Woodard v. Apfel*, No. 99-0926-RV-L, 2001 WL 102354, * 10 (S.D. Ala. Jan. 8, 2001), the court concluded that the claimant's left eye blindness which resulted in a loss of depth perception was a severe impairment. *See also Khon v. Barnhart*, No. Civ.A.03-5122, 2004 WL 2203740, *6 (E.D. Pa. Sept. 3, 2004) (noting that claimant's left eye blindness was a nonexertional limitation).

However, in light of the ALJ's conclusion that Stephens has been unable to perform any past relevant work based on evidence that the exertional requirements exceeded the established residual functional capacity (R. 31-32), it is unnecessary for the court to grapple with whether monocular blindness standing alone is a severe impairment.

As previously discussed, § 12.05C requires a valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function. Because Stephens' daily activities and behavior are consistent with those of an individual suffering from mental retardation with a valid full-scale IQ score of 61, he meets the first prong of 12.05C. This court concludes that Stephens also meets the second prong of the Listing. In *Flinn v. Heckler*, 768 F.2d 1273, (11th Cir. 1985), the court held that substantial evidence indicating that a claimant is unable return to his former work activities cannot support a finding of "no severe impairment" within the meaning of the regulations. As set forth in § 12:00, MENTAL DISORDERS, 20 C.F.R. Pt. 404, Sbpt. P., App. 1, the regulations provide that the criteria in paragraph C "describe[s] impairment-related functional limitations that are incompatible with the ability to do any gainful activity." In addition, the regulations state that "[f]or paragraph C, we will assess the degree of functional limitation the additional impairment(s) imposes to determine if it significantly limits [a claimant's] physical or mental ability to do basic work activities, *i.e.*, is a 'severe' impairment(s), as defined in §§ 404.1520(c) and 416.920(c)." *Id.* In his analysis, the ALJ did not find that Stephens' mental limitations would prevent him from returning to his past relevant work; instead, the ALJ concluded that the Stephens is unable

14

to perform any past relevant work "because the exertional requirements all exceeded the established residual functional capacity." (R. 32.) Thus, the severity of the additional impairments imposed on Stephens significantly limited his physical or mental ability to do basic work activities. Therefore, by definition, Stephens meets the second requirement of 12.05C because he has impairment-related functional limitations that are incompatible with the ability to do any gainful activity. When this conclusion is considered in conjunction with the monocular vision which the ALJ virtually ignored, the court has no hesitancy in concluding that Stephens meets all of the criteria of Listing 12.05C. This case is due to be remanded to the Commissioner for an award of benefits.

## V.  Conclusion

Accordingly, this case will be reversed and remanded to the Commissioner for further proceedings consistent with this opinion.

A separate order will be entered.

Done this 13th day of February, 2009.


                      /s/Charles S. Coody
                      CHARLES S. COODY
                      UNITED STATES MAGISTRATE JUDGE